FILED
2017 Jun-23 PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAFACADIO HENDERSON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:16-cv-01165-RDP |
| CAROLYN W. COLVIN, Commissioner of Social Security, | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Lafacadio Henderson ("Plaintiff" or "Henderson") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"). Plaintiff seeks review of the decision by the Commissioner of the Social Security Administration ("Commissioner") to deny his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") (Tr. 160-69). *See also* 42 U.S.C. §§ 405(g), 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. Proceedings Below

Plaintiff filed his applications for DIB and SSI on March 21, 2013, alleging disability since the last day of his employment on October 10, 2012. (Tr. 160). Plaintiff later amended his application to reflect that his employment ended due to the end of his contract rather than as a result of his impairments.[1] Plaintiff's amended allegations regarding his onset date indicate that

---

[1] Plaintiff initially filed for Unemployment Benefits on October 10, 2012 and received Unemployment Benefits between $900 and $1,200 per month until May 1, 2013 (Tr. 16).

1

he became disabled on May 1, 2013.[2] *Id*.

On April 19, 2013, the Social Security Administration denied Plaintiff's application. (Tr. 54). Plaintiff then filed a Request for Hearing on May 18, 2013 and received a hearing before Administrative Law Judge George W. Merchant ("ALJ") on November 3, 2014 (Tr. 11-50, 72-74, 98-100). On January 8, 2015, the ALJ determined that plaintiff was not disabled under the criteria set forth in 20 C.F.R. §§ 404.1520 and 416.920. (Tr. 70-87). On March 13, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision (Tr. 9-10). The appeal was denied on March 24, 2016. (Tr. 3-8). Accordingly, the final decision of the Commissioner is properly before the court for appellate review.[3]

At the time of the hearing, Plaintiff was 43 years old. (Tr. 18). Over the past fifteen years, Plaintiff has worked as a police officer (1994-1999), a home remodeler (2000-2005), and a cable lubrication specialist in construction (2005-2012). (Tr. 205). Plaintiff alleges that since 2008, he has felt sharp and constant leg pain from hip to ankle. (Tr. 209). Plaintiff states that the pain prevents him from sitting for more than twenty consecutive minutes or sleeping for more than two hours. (Tr. 14, 29). He states that he is prescribed "serious pain medications," including Hydrocodone, Ibuprofen, Methocarbomol, and Naproxen to treat his pain. (Tr. 15, 27). Plaintiff uses a cane and back brace to walk and goes to physical therapy every few weeks. (Tr. 29-30). Plaintiff alleges that in 2012, he was forced to stop work as a cable lubrication specialist because of sciatic impingement with bilateral leg pain, degenerative disc disease, and osteoarthritis. (Tr. 54, 205, 20). Plaintiff further alleges that he must frequently change positions or get up at night because his pain is too severe, he has a limited range of motion making it difficult to shower or

---

[2] *See* discussion *infra* Part V(b)(1).

[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for the purposes of judicial review when the Appeals Council denied review).

2

dress, he cannot work outside, lift, or bend over, and must take frequent breaks in order to complete tasks. (Tr. 217-25).

Plaintiff receives his medical care primarily from the Birmingham Veteran's Administration Medical Center ("VAMC"). (Tr. 272-432, 433-684). On November 10, 2011, Plaintiff's Primary Care Physician, Dr. Carol E. Crowley, determined that he had left lumbar radiculopathy resulting from moderate diffuse disk bulge. (Tr. 275-76). Plaintiff entered physical therapy, which reduced his pain from constant to intermittent. (Tr. 473). On February 10, 2013, Plaintiff described his back as only "occasionally stiff" and asked Dr. Crowley if he should file for disability. (Tr. 590). Dr. Crowley advised Plaintiff to continue taking Ibuprofen and going to physical therapy, but stated that it was Plaintiff's decision whether to return to work. *Id.*

Plaintiff returned to physical therapy but reported limited mobility requiring use of a cane, back brace, TENS unit,[4] and heel lift. (Tr. 518, 520, 721). According to Plaintiff, his condition prevents him from engaging in his outdoor hobbies, including hunting, fishing, horseback riding, and gardening. (Tr. 222). Nevertheless, Plaintiff cares daily for a Tennessee Walker horse (Tr. 40-41), spent two days in May 2014 cutting up fallen trees (Tr. 781), recently went turkey hunting (Tr. 921), and was able to travel out-of-state to deal with his father's estate (Tr. 911).

Plaintiff reported an increase in movement at a November 8, 2014 physical therapy visit, although no decrease in his level of pain. (Tr. 509). One month later, Plaintiff reported "getting somewhat better." (Tr. 501). On January 14, 2013, Dr. Sean Hatton examined Plaintiff for a

---

[4] A Transcutaneous Electrical Nerve Stimulation (TENS) Unit is a device which uses electric current to stimulate the nerves in the body to therapeutically generate higher amounts of naturally-occurring pain relievers. Josinari M. DeSantana et al., *Effectiveness of Transcutaneous Electrical Nerve Stimulation for Treatment of Hyperalgesia and Pain*, Current Medicine Group (2008), available online at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2746624.

Compensation and Pension ("C&P") examination at the Birmingham VAMC. (Tr. 543-559). Dr. Hatton determined that Plaintiff's impairment "would prevent employment of a physical, but not a sedentary nature." (Tr. 555).

Plaintiff served as a Marine from 1989 – 1993, including six and a half months in Somalia with the 13th Marine Expeditionary Unit. (Tr. 32-33). On August 27, 2014, Plaintiff's physical examination was normal, but Plaintiff reported for the first time that his military combat in Somalia had been causing him to have nightmares. (Tr. 891). On September 9, 2014, Dr. Adeel Rabbani of the Mental Health Clinic at the VA examined Plaintiff; Plaintiff reported that the nightmares occurred immediately after his return from Somalia. (Tr. 890). Plaintiff testified that he was engaged in military combat in Somalia, but the record reflects that he served in a non-combat role. (Tr. 286).

Plaintiff alleges that his nightmares subsided a year after he returned from Somalia, but recently began reoccurring multiple times per week because of a hunting accident in August 2014. (Tr. 890, 901). Dr. Rabbani, a psychiatrist, diagnosed Plaintiff with anxiety, depression, and unresolved issues related to his combat service. (Tr. 15, 894-895). Dr. Rabbani noted that Plaintiff's "depression is constant," and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55, which indicates mild psychiatric symptoms. (Tr. 890). Dr. Rabbani also noted that Plaintiff admitted to "binge drinking during nail-biting football games" and has a 2012 DUI conviction. (Tr. 892). Plaintiff was prescribed and began taking Sertraline and Trazodone to manage his mental impairment. (Tr. 38, 900). On September 18, 2014, Plaintiff returned to the Mental Health Clinic, but showed no changes in his mental status. At an October 16, 2014 visit

to the clinic, however, Plaintiff was diagnosed with rule-out post-traumatic stress disorder (PTSD).[5] (Tr. 900).

Following that diagnosis, Plaintiff's medication schedule was changed to include Zoloft, Prazosin, Mirtazapine, and an increased dose of Sertraline. (Tr. 901-02). Plaintiff reported "feeling hopeful about his new medicines" (Tr. 897) and Plaintiff's wife reported an improved mood with the addition of the Zoloft (Tr. 901). Because the record demonstrates Plaintiff improved with treatment, the ALJ found Plaintiff's psychiatric impairments to be non-severe and considered only Plaintiff's physical impairments to be severe for the purposes of determining his disability.

With respect to Plaintiff's physical impairments, Vocational Expert Dr. Mary Kessler testified that Plaintiff's work as a cable lubrication specialist and police officer qualifies as high-to-medium skilled. (Tr. 47). Dr. Kessler testified that Plaintiff's past work is no longer a viable option for him, given that he cannot operate foot control maneuvers using his left side, cannot climb any ladders, ropes or scaffolds, and is vulnerable to unprotected heights and uneven terrain. (Tr. 47). While Dr. Kessler opined that sedentary, unskilled jobs are available to Plaintiff, she also testified that there is no tolerance for workers requiring additional rest breaks or pain-related, unscheduled absenteeism in a competitive employment environment. (Tr. 48).

## II.    ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. § 404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or

---

[5] Rule-out PTSD, confusingly, does not rule out PTSD as a diagnosis. Instead, it indicates that PTSD needs to be considered as a possible diagnosis but does not affirmatively indicate a diagnosis. *See Lamere v. NY State Office for the Aging*, 2004 WL 5572841 No. 03CV00356 (N.D.N.Y.) (Panzetta Dep. 17:17-17:20, July 8, 2004).

mental activities. 20 C.F.R. § 404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. § 404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b) and 416.920(b).

Second, the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the impairment is not met or is not functionally equivalent, the ALJ will assess the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§ 404.15245(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). The ALJ makes an assessment about a claimant's RFC using a two-step process that determines: (1) whether there is an underlying medically-determinable impairment that could reasonably be expected to produce the claimant's pain; and (2) the extent to which the claimant's symptoms would limit claimant's functioning. 20 C.F.R. §§ 404.1545(e) and 416.920(e). To determine the limiting effect of the claimant's impairment, the ALJ must consider the credibility of the claimant's

statements about their pain in the context of the record. 20 C.F.R. §§ 404.1529(c)(3) and 416.920(c)(3).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step 4 whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id.* If the claimant is unable to perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that the claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.912(g) and 416.960(c).

Here, the ALJ determined as a threshold requirement that the claimant met the insured status requirements of 20 C.F.R. §§ 216(i) and 223 of the Act because he remained insured through June 30, 2015. Nevertheless, for the reasons noted below, the ALJ determined that the claimant is *not* entitled to benefits under the 5-step sequential evaluation process.

First, Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of May 1, 2013. Plaintiff amended his initial alleged onset date of October 10, 2012 because, from the fourth quarter of 2012 through the second quarter of 2013, Plaintiff filed for and received Unemployment Compensation benefits. (Tr. 77). Plaintiff's representative admitted that the Plaintiff's work initially stopped not because of his impairments, but because he reached

the end of his contract. The disparity in dates and the requisite amendment undermines Plaintiff's credibility, as does Plaintiff's failure to report earnings received from his work as a home remodeler from 2000-2005. (Tr. 188-91). Nevertheless, it is clear that Plaintiff has not engaged in substantial gainful activity since the amended onset date.

At the second step, Plaintiff was found to have a single severe impairment: lumbar degenerative disc disease with radiculopathy. (Tr. 275-276). The ALJ found Plaintiff's mental impairments of depression and anxiety to be non-severe because they did not cause more than a minimal limitation on the claimant's ability to perform other work activities. (Tr. 78). The ALJ considered four broad functional areas given in paragraph B of 20 C.F.R., § 404(P)(1) when evaluating mental disorders: daily living, social functioning and concentration, and episodes of decompensation. Dr. Rabbani reported following Plaintiff's September 9, 2014 visit that Plaintiff, although depressed, was attentive, cooperative, logical, goal-directed, and had fair judgment. (Tr. 894). Given that his follow-up mental status examinations did not reflect any changes and the additions of Zoloft, Sertraline, and Prazosin to Plaintiff's medication regime improved his mental state, the ALJ found that Plaintiff's mental impairments were non-severe and considered only Plaintiff's physical impairments for the purposes of the 5-step sequential evaluation. (Tr. 78-80).

The ALJ also determined that Plaintiff's impairment due to lumbar degenerative disc disease with radiculopathy, although severe, does not meet or functionally equal one of the listed impairments necessary to constitute a disability under the Act. The ALJ found that lumbar degenerative disk disease does not satisfy Listing 1.04 because it does not result in one of the following: (1) spinal nerve root compression causing neuro-anatomic distribution of pain; (2) spinal arachnoiditis; or (3) lumbar spinal stenosis resulting in pseudoclaudication. (Tr. 80-81).

Because Plaintiff's impairment does not meet or functionally equal a listing, the ALJ considered whether Plaintiff has an underlying medically-determinable impairment that could reasonably be expected to produce his symptoms. Plaintiff stated that he could not bend or lift things without pain, could walk only 50 yards on a flat surface, and required breaks when completing tasks. (Tr. 217-225). While the ALJ found that Plaintiff's complaints regarding his pain could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's claims regarding the intensity and functional limits of that pain were less than credible because objective medical evidence did not support their frequency and severity as asserted by Plaintiff. In the Eleventh Circuit, the ALJ can consider why a claimant became unable to work in determining whether he became disabled as he alleges. *Cf. Pennington v. Comm'r of Soc. Sec.,* 652 F. App'x 862, 871 (11th Cir. 2016) (finding that a claimant's inability to specifically state why he could not work was evidence that his alleged onset date was not credible). As the ALJ noted, Plaintiff cares for his Tennessee Walker horse daily, goes turkey hunting, and cuts fallen trees, but reports he cannot participate in outdoor activities or walk more than 50 yards (Tr. 84, 222-23, 898, 921). Plaintiff initially alleged that he left work due to his impairment, but later amended his alleged onset date to reflect that his work ended as a result of a completed contract. (Tr. 16, 204). Plaintiff testified that he reported his earnings from self-employed work as a home remodeler, but could produce no evidence to support that assertion. (Tr. 43-44). Finally, Plaintiff testified that he cannot usually sit for more than 20 minutes without having to walk around (Tr. 22). Nevertheless, the record contains objective medical evidence which indicates Plaintiff's back condition would not prevent sedentary work, diagnostic tests indicate his condition is unremarkable, and the evidence shows that with physical therapy, Plaintiff was "getting somewhat better, [and] back pain [was] not as frequent." (Tr. 496, 501, 533, 553). Because

Plaintiff's medical records are inconsistent with the extent of the pain and discomfort he claims, the ALJ was called upon to consider the evidence that is internally consistent with the claims and determined that the record supports a greater RFC than that alleged by Plaintiff.

The VE determined that an individual of Plaintiff's age (41 years), level of education (high school), amount of work experience, and RFC could not perform Plaintiff's past relevant work. The ALJ considered that testimony in finding that Plaintiff is unable to perform his past relevant work as a cable lubrication specialist, a construction worker, and a police officer. (Tr. 205). Nonetheless, under the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that jobs exist in the national economy that Plaintiff can perform. More specifically, the VE found that the claimant could perform work as a general office clerk, production/table worker, and as an order clerk, all of which have at least 1,200 jobs in-state and over 100,000 nationally. (Tr. 47-48). Thus, the claimant was found not to be disabled at step 5 of the 5-step sequential evaluation process.

## III. Plaintiff's Argument for Reversal

Plaintiff advances two main arguments in arguing that the ALJ's decision should be reversed. First, Plaintiff contends that this court should include evidence omitted from the record by the Commissioner. Plaintiff argues that counsel faxed a brief entitled "Evidence in Support of Mr. Henderson's Combat Status," along with supporting documents, to the Appeals Council ("AC") on April 29, 2015. (Doc. #9 at 1). Plaintiff contends that the aforementioned brief is listed as Exhibit 11E in the ALJ's decision, but six pages of the supporting documents are missing from the Transcript. *Id*. Plaintiff asks the court to add the missing pages to the record. (*See* Doc. #10).

Secondly, Plaintiff contests the merits of the ALJ decision. He argues that the ALJ committed reversible error in making a credibility determination based on incomplete and incorrect information. (Pl.'s Mem. at 6). Plaintiff asserts that information regarding his (1) combat status,[6] (2) application for unemployment compensation, (3) testimony about home remodeling work, and (4) sequence of documents and the ALJ's characterization of that sequence,[7] all of which the ALJ found diminished his credibility, was incomplete and incorrect. (*Id.* at 6-12).

As to the merits of the ALJ decision, Plaintiff contends that the ALJ committed reversible error in determining that Plaintiff's depression and anxiety were non-severe and substituted his own medical opinion based on Plaintiff's improvement rather than relying on the judgment of Plaintiff's treating psychiatrist. *Id.* at 12-15. Finally, Plaintiff argues that the ALJ applied improper legal conclusions in determining Plaintiff's RFC. *Id.* at 17-18. Plaintiff contends that the ALJ incorrectly evaluated his ability to cut down trees and care for his Tennessee Walker and gave too much weight to Dr. Hatton's C&P evaluation. (*Id*. at 11-12, 17-18).

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct

---

[6] Plaintiff asserts that the ALJ gave too much weight to Plaintiff's status as a non-combat veteran. (Tr. 293). Plaintiff argues the ALJ mistakenly relied on the phrase 'combat status,' when in fact the term only applies to combat activity in Somalia after November 11, 1998. (Pl.'s Mem. at 7). Plaintiff argues that because the ALJ relied on this nomenclature in order to make its credibility determination, the ALJ's error is grounds for reversal. (*Id.* at 8). *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (finding that a lack of credibility is grounds for remand when credibility is crucial to the outcome of the case).

[7] Plaintiff further contends that the ALJ improperly relied on his amended alleged onset date as evidence of his lack of credibility and argues that such an approach is against public policy because it will discourage applicants from amending their applications. (Pl.'s Mem. at 9). Plaintiff also asserts that the ALJ inaccurately relied on Plaintiff's testimony with respect to his work as a self-employed home remodeler. (*Id.* at 9-11). Plaintiff says that he did not unequivocally state that he had reported the income, and that the ALJ should have investigated further. (*Id*. at 10). Similarly, Plaintiff protests that the ALJ inaccurately believed the sequence of documents undermined his credibility. None of these assertions has merit.

legal standards were applied. 42 U.S.C. § 405(g); *see Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V. Discussion

After careful review, the court finds that substantial evidence supports the ALJ's findings and the ALJ correctly applied the proper legal standards. The court also concludes that his motion to include omitted record evidence is due to be denied.

### A. Whether the Commissioner Improperly Omitted Evidence from the Record[8]

Under the fourth sentence of 42 U.S.C. § 205(g), this court may affirm, modify, or reverse the Commissioner's decision based "upon the pleadings and transcript of the record." Plaintiff argues this court should include six pages of documents properly submitted as part of the record but "inexplicably omitted" from the transcript by Defendant. (Pl.'s Mem. at 6).

---

[8] In addition to the initial complaint seeking reversal of the denial of benefits, Plaintiff has filed a separate motion to include omitted records into Evidence (Doc. #10). It is that separate Motion (Doc. #10) that is considered in Section V.A., *infra*.

Plaintiff contends that Defendant "apparently wants to be advantaged by his own error" in omitting submitted evidence from the record *Id.* at 3. In the Eleventh Circuit, however, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision…is not a broad rejection" of Plaintiff's medical condition. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ has the prerogative to consider evidence as she wishes, so long as substantial evidence supports the ALJ's conclusion as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Because substantial evidence supports the ALJ's credibility determination, the omitted documents need not be included under sentence four.

Nevertheless, under sentence six of § 205(g), the court can treat Plaintiff's motion to include omitted evidence as a motion to remand if there is evidence which is (1) material; (2) new and non-cumulative; and (3) demonstrates that Plaintiff has good cause for the earlier failure to submit the evidence. *See Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985). For the reasons explained below, this court finds that the evidence is immaterial and cumulative, and that the Motion to Include Omitted Records into Evidence (Doc. #10) is due to be denied.

**1. The Omitted Evidence is Immaterial.**

The omitted evidence includes the following: (1) a 'chronological record' of Plaintiff's military service (Doc. 10-1, pp. 1-2); (2) an excerpt from *Somalia: US Intervention, 1992-1994* (Doc. 10-1, p. 3); (3) an excerpt from *Holding Hands with Heroes* (Doc. 10-1, p. 4); and (4) a *New York Times* article entitled "Pentagon says Killing of 2 Somalis May Have Been Accidental" (Doc. 10-1, pp. 5-6). Although the documents address Plaintiff's combat status in Somalia, there is no reasonable probability that they would change the ALJ result. The question of Plaintiff's combat status was not the only factor which diminished Plaintiff's credibility. *See*

*Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (finding that evidence is material only if a reasonable probability exists that the evidence would change the administrative result). The ALJ found Plaintiff less than credible because of his amended alleged onset date, earlier failure to report PTSD-like symptoms, and self-inflated combat experience. (Tr. 82-84). Plaintiff's combat status was only one of a number of factors diminishing Plaintiff's credibility; therefore, additional evidence regarding his combat status in Somalia would not reasonably change the ALJ's overall credibility determination.

**2. The omitted evidence is cumulative.**

The evidence submitted by Plaintiff regarding his combat status is cumulative because information regarding Plaintiff's PTSD claim already exists in the record. (Tr. 203, 286, 272-684, 889-891, 894, 931). While the omitted pages include evidence of Plaintiff's deployments, the regiment's involvement in Somalia, and details about the general conflict, Plaintiff submitted other evidence in support of his PTSD complaint. (Tr. 198). Because the omitted evidence does not contain new facts regarding Plaintiff's PTSD claim, it is cumulative.

Based on the foregoing analysis, Plaintiff's Motion to Include Omitted Record in Evidence, (Doc. #10), is due to be denied.

**B. Whether the Commissioner's Final Decision Should be Reversed**

After review of the administrative record, the court concludes that the ALJ did not commit error in the findings or conclusions challenged in this case. The court addresses Plaintiff's arguments for reversal, in turn.

**1.    The ALJ Did Not Commit Reversible Error in Finding Plaintiff's Statements Less Than Credible.**

Plaintiff contends the ALJ relied on incomplete and incorrect information in assessing Plaintiff's subjective complaints. (Pl.'s Mem. at 6-12). The ALJ found Plaintiff less than credible

for four reasons: (1) Plaintiff's subjective testimony contradicts objective medical evidence; (2) Plaintiff's daily activities (turkey hunting, cutting down trees, caring for horses, and traveling) contradict his subjective testimony; (3) Plaintiff's initial alleged onset date contradicts his application for Unemployment Benefits; and (4) Plaintiff failed to produce evidence that he reported his income from work as a home remodeler. (Pl.'s Mem. at 6-12). Where the ALJ gives "clearly articulated explicit reasons for rejecting…subjective complaints, …the ALJ's credibility determination [is] supported by substantial evidence." *See Leiter v. Comm'r of Soc. Sec.*, 377 Fed. App'x. 944, 947 (11th Cir. 2010); *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Plaintiff also argues the ALJ failed to fully develop the record thus basing his credibility finding upon inaccurate information. (Pl.'s Mem. 11). Indeed, an ALJ must develop a "full and fair record" by "elicit[ing] testimony or mak[ing] findings" regarding Plaintiff's impairment. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Leiter,* 377 Fed. App'x. at 947; *see also* 42 U.S.C**.** §§ 423(d)(5)(A), 404.1529(a-b). Plaintiff alleges "the ALJ repeatedly fails to avail himself of the opportunity to ask questions about [these] factual issues." (Pl.'s Mem. at 12). However, here, the ALJ did just that.

During the hearing, the ALJ questioned Plaintiff about feeding his Tennessee Walker each day after Plaintiff failed to discuss the horse when asked about his daily activities. The ALJ also requested further documentation of Plaintiff's military service (Tr. 49) and elicited testimony from Plaintiff about his work history, daily activities, and military service (Tr. 32-41). It remains Plaintiff's burden to produce evidence in support of his claim. *See* 20 C.F.R. § 416.912(a); *Ellison*, 355 F.3d at 1276. Moreover, in the Eleventh Circuit, any such harmless

15

error (*i.e.*, one in which there are no gaps in the record) does not require remand when there is sufficient medical evidence for the ALJ to make an informed decision. *See Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997). Because the ALJ adequately developed the record and relied on substantial evidence in making its credibility determination, no reversible error was committed.

### 2. The ALJ Did Not Commit Reversible Error in Determining Plaintiff's Depression and Anxiety to be Non-Severe.

Plaintiff next asserts that the ALJ erred at step two of the 5-step sequential evaluation process because Plaintiff's depression and anxiety meet the low threshold of a 'severe' impairment. (Pl.'s Brief at 1-2). Under 20 C.F.R. §§ 404.1520(a)(4)(ii), and (c), 416.920(a)(4)(ii), and (c), and 416.921(a), a severe impairment is an impairment that limits claimant's physical or mental abilities to do basic work activities for at least twelve consecutive months. The claimant bears the burden of proving that the impairment is "severe." *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii).

Plaintiff correctly asserts that the threshold for determining severity is low. *See McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) (finding that an impairment "is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work"). Nevertheless, a claimant must demonstrate that his impairment interferes with his ability to work; it is plainly insufficient for Plaintiff to simply demonstrate that he received psychiatric treatment and was prescribed strong medications. (Tr. 399-400).

The ALJ evaluated Plaintiff's ability to work based on the paragraph B criteria within the Listing of Impairments for mental disorders. (Tr. 78-80). *See* 20 C.F.R. §§ 404.1520(a),

416.920(a). The paragraph B criteria include four areas of functionality: daily living, social functioning and concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(4). The ALJ determined Plaintiff's impairment was mild under the first three areas. This determination was supported by substantial evidence including: (1) medical records that indicate Plaintiff was "in good control" and that he was "already receiving [the] needed treatment" (Tr. 907-908, 909, 912); and (2) Plaintiff's failure to initially allege mental impairment as the basis for his disability (Tr. 203), especially in light of Plaintiff's aforementioned lack of credibility.

Plaintiff nonetheless asserts that the ALJ erred in disregarding the opinion of Dr. Adeel Rabbani as to Plaintiff's Global Assessment of Functioning (GAF) score of 55[9]—which indicates moderate difficulty in social, occupational, or school settings—and that the ALJ instead substituted its own analysis. (Pl.'s Mem. at 16). *See American Psychiatric Ass'n*, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2000). However, an ALJ can disregard a treating physician's opinion if good cause is clearly articulated to do so. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists where the physician's opinion was not bolstered by the record evidence or the evidence supports a contrary finding. *Id.* Here, the ALJ noted that Dr. Rabbani assigned Plaintiff a GAF of 55 before Plaintiff had received treatment for his psychiatric complaints. (Tr. 80). The ALJ also found that Dr. Rabbani failed to note any substance abuse, despite Plaintiff's DUI arrest and admitted periodic binge drinking. (Tr. 38).

---

[9] The Eleventh Circuit has previously declined to use GAF scores in determining levels of disability. *See Wind v. Barnhart,* 133 F. App'x 684, 692 n.5 (11th Cir. 2005).

17

Because the record supports these findings, the ALJ articulated good cause for the decision declining to give Dr. Rabbani's opinion substantial weight. No reversible error was committed.

### 3. Proper Legal Conclusions were Applied in Determining Plaintiff's Residual Functional Capacity.

Plaintiff argues that absent the ALJ's incorrect evaluation of his daily activities with the Tennessee Walker, there is insubstantial evidence to support the RFC. For the reasons noted above, Plaintiff's testimony regarding his daily activities is not entirely credible. (*See* Section V.B.1., *supra*). Nevertheless, the ALJ did not rely on his own evaluation of Plaintiff's daily activities when determining Plaintiff's RFC. The ALJ also examined Plaintiff's medical history, treatment, and the medical opinions of his doctors. (Tr. 81-85, 553, 507, 566, 882-884, 775, 777, 489, 499, 896, 909, 919). Plaintiff argues the ALJ failed to accurately evaluate his medical record because the ALJ omitted Plaintiff's account that he was "really hurting badly" after cutting up trees. However, even "to the extent that…other evidence [exists] which would undermine the ALJ's RFC determination," this court's appellate review does not allow it to "re-weigh the evidence or substitute [its] judgment." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Thus, substantial evidence supports the ALJ's finding as to Plaintiff's RFC.

Additionally, Plaintiff contends that the ALJ gave improper weight to the conclusions reached by Dr. Hatton, who determined that Plaintiff's back condition "would prevent employment of a physical but not sedentary nature." (Tr. 555). Dr. Hatton's opinion is consistent with Plaintiff's medical history in at least the following ways: (1) during his November 1, 2012 Primary Care Outpatient Examination, Plaintiff "ha[d] no new complaints at this time, and report[ed] that he ha[d] been doing well" (Tr. 568); (2) during a June 23, 2014 Primary Care

Outpatient Examination, Plaintiff "state[d] that his back pain had decreased with physical therapy" (Tr. 770); and (3) during an October 27, 2014 Radiology Procedure, Plaintiff reported that he "stay[ed] on a schedule because he takes care of his four horses" including the Tennessee Walker, who he "spends time with often throughout the day." (Tr. 898). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [is given] to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Not only is Dr. Hatton's opinion consistent with the record, but it was well supported by his examination of Plaintiff as well as with Plaintiff's medical history. (Tr. 309). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Therefore, no reversible error was committed.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and the pending motion is due to be denied. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 23, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE